UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:09-CR-147 |
| | ) | | (VARLAN/GUYTON) |
| OMAR M. SMITH, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION AND ORDER

Defendant Omar M. Smith is charged in the indictment in this case [Doc. 1] with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Defendant has filed a Motion to Suppress and Memorandum in Support [Doc. 11], in which he requests the suppression of all evidence obtained in this case, including a firearm, ammunition, and all statements alleged to have been made by him as a result of the search and seizure conducted in connection with the case. The government has filed a response in opposition to this motion [Doc. 14].

Magistrate Judge H. Bruce Guyton held a suppression hearing on January 12, 2010 [*see* Doc. 15]. On March 11, 2010, the magistrate judge filed a Report and Recommendation (the "R&R") [Doc. 20], in which he recommended that defendant's motion be denied with respect to the evidence stemming from a search and seizure of defendant's person, but that the motion be granted with respect to any statements allegedly made by the defendant after he was taken into custody and placed in the police car, excepting defendant's responses to

routine booking questions.[1] Defendant filed objections to the R&R on March 25, 2010 [Doc. 22]. The government filed a response to the objections on March 31, 2010 [Doc. 23]. This matter is before the Court on defendant's objections.

The Court has carefully considered the motion to suppress, the response, the R&R, the objections, and the response to those objections. For the reasons that follow, the Court will overrule defendant's objections, accept in whole the R&R, and deny the motion to suppress.

The Court first sets forth the findings of fact made by the magistrate judge in his R&R.

## I.     Findings of Fact[2]

In the late morning of July 3, 2009, Sergeant Greg Coker of the Knoxville Police Department (the "KPD") received a police dispatch of a 911 call reporting a fight between two males and one female at 2000 Washington Avenue, Apartment A in Knoxville. He drove to the residence and went to the front door, where he encountered a disheveled male attempting to leave the residence. The man had a small amount of blood on his face, and appeared to have been in a fight. A female and the defendant were in the kitchen of the residence. Sgt. Coker did not permit the man to leave, and the man went into a room to the

---

[1] The R&R notes that the government "concedes that statements by . . . [d]efendant after he was arrested and placed in the police cruiser but before he received the *Miranda* warnings are not admissible," but "contends . . . that answers to routine booking questions and any statements by . . . [d]efendant after he was advised of his rights should not be suppressed" [Doc. 20].

[2] The magistrate judge based his findings of fact on testimony given at the suppression hearing and on an independent review of the video recordings in the case [Doc. 20].

left of the front door.  The man had his hand in his pocket, and refused to comply with Sgt. Coker's request that he remove it.  Sgt. Coker then physically removed the man's hand from his pocket, and saw that the man was holding what appeared to be a crumbled piece of crack cocaine.

While Sgt. Coker was dealing with the man, defendant walked past the door to the room and toward the front door.  Sgt. Coker followed defendant, pulling the first man along with him.  When Sgt. Coker got to the front door of the residence, defendant had stepped off the porch, and had walked past the length of the porch heading toward Bertrand Street.  Defendant then stopped.  The video recording from Sgt. Coker's in-car camera reveals that Sgt. Coker yelled for defendant to return to the porch.  KPD Officers Schreiber[3] and Timothy Evan Thornton, who had also received the radio dispatch regarding a fight at 2000 Washington Avenue, arrived on the scene.  As they approached defendant, defendant was yelling that he did not do anything.  Sgt. Coker called to the other officers to bring defendant back to the porch.

Officers Schreiber and Thornton approached defendant in the yard of 2000 Washington Avenue.  Defendant continued to yell that he had not done anything, to back toward Bertrand, and to step from one foot to the other.  When he was close to defendant, Officer Thornton smelled alcohol on defendant's person when he got near to him.  The video recordings reveal that defendant then walked to and stepped onto the porch with Officers

---

[3] Officer Schreiber's first name does not appear in the record.

Thornton and Schreiber following closely behind him. Once he stepped onto the porch, defendant attempted to move quickly past Sgt. Coker, and enter the house. Sgt. Coker grabbed defendant, who immediately jerked out of his grasp. Sgt. Coker swept his leg under defendant, causing defendant to fall face down onto the porch.

Once defendant was lying on the porch, Officer Thornton frisked him while Sgt. Coker restrained him. While holding defendant down, Sgt. Coker smelled alcohol on defendant's person. Officer Thornton asked defendant if he had identification, and warned defendant not to reach for anything. Officer Thornton then asked if anything would "stick him" while he frisked defendant. When Officer Thornton attempted to frisk defendant's left side, defendant rolled onto that side and pushed Thornton's hand away with his arm. As Officer Thornton pushed defendant back over, he felt the end of a gun inside defendant's pants, and he alerted the other officers by saying, "Gun, gun." Officer Thornton then pulled the gun out of defendant's pocket and handed it to Officer Schreiber.

Defendant was handcuffed on the porch following this frisk and the discovery of a weapon on his person. Officer Thornton then escorted defendant to his patrol car. The entire incident, from the time of Sgt. Coker's arrival at the residence, to the time defendant was escorted to the police car, took approximately four and one-half minutes. During the course of the incident, the female inside the house was yelling, and at least two people had gathered outside to watch what was happening. Officer Thornton did not advise defendant of the *Miranda* warnings, either on the porch or in the patrol car. Officer Thornton subsequently

sought General Sessions Court warrants against defendant for public intoxication, disorderly conduct, and possession of a firearm.

II.     Analysis

Defendant objects to four conclusions reached by the magistrate judge in the R&R: (1) that the officers had reasonable suspicion that defendant was involved in criminal activity at the time he was seized; (2) that the officers could reasonably believe that defendant might have a weapon, and that he was a threat to their safety such that the officers would be permitted to frisk defendant; (3) that, assuming reasonable suspicion existed to justify a frisk, the scope of that frisk did not exceed permissible limits; and (4) that there was probable cause to justify defendant's arrest for public intoxication [Doc. 22].[4] The Court undertakes a de novo review of those portions of the R&R to which defendant objects. Fed. R. Crim. P. 59(b)(3).

   A.    **Whether the Officers Had Reasonable Suspicion that Defendant Was Involved in Criminal Activity at the Time He Was Seized**

Defendant first objects to the magistrate judge's finding that the officers had reasonable suspicion justifying a *Terry* frisk of defendant. A "brief investigative stop, or *Terry* stop, by an officer who is able to point to 'specific and articulable facts' justifying his or her reasonable suspicion that [a] suspect has been or is about to be involved in criminal

---

[4] While defendant raises these four objections in the introduction to his brief, defendant's brief contains only three headings in its argument portion, addresses these objections out of order, and makes arguments in support of these objections that do not always correspond to the headings under which they appear. The Court thus addresses each objection with those caveats in mind.

activity is not an unreasonable seizure." *United States v. Martin*, 289 F.3d 392, 396 (6th Cir. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Determining whether a *Terry* stop comports with the Fourth Amendment is a two-step process: First, the Court must determine whether the officer had a reasonable basis for the stop by looking to whether the officer had reasonable suspicion supported by specific and articulable facts. *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006). Second, if the stop was proper at its inception, the Court must examine whether the intrusiveness of the stop was reasonably related to the situation at hand by reviewing the reasonableness of the officer's actions in the context of the presenting circumstances. *Id.* A court reviewing the legality of an investigative stop must consider the totality of the circumstances in evaluating whether reasonable suspicion exists. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Defendant argues that the officers in this case lacked particularized suspicion of wrongdoing on the part of the defendant that would justify a *Terry* frisk [Doc. 22]. Specifically, defendant argues that "there were no indications that [he] was involved in the fight" at 2000 Washington Avenue [*Id.*]. Defendant argues further that his "mere presence in an area where . . . criminal conduct has occurred is insufficient to provide particularized suspicion of wrongdoing on his part" [*Id.*].

The Court disagrees with defendant's analysis of the facts in this case. In deciding that the arresting officers had reasonable suspicion to conduct an investigatory stop of defendant, the magistrate judge considered the fact that a 911 call had been placed identifying two males and one female in a fight at 2000 Washington Avenue; that the officers

6

were able to corroborate the details of the 911 call upon their arrival at 2000 Washington Avenue; that defendant attempted to leave the scene of the investigation when Sgt. Coker arrived, loudly denying his involvement in criminal activity as he did so; and that defendant attempted to avoid police contact when he returned to the porch by sidling past the officers and entering the residence [Doc. 20]. The Court finds that the magistrate judge correctly held, after a review of the totality of the circumstances, that the arresting officers had reasonable suspicion to stop defendant in order to investigate his potential involvement in the criminal activity occurring at 2000 Washington Avenue. The Court will therefore overrule defendant's first objection to the R&R.

> **B. Whether the Officers Could Reasonably Believe that Defendant Might Have a Weapon, and that Defendant Was a Threat to the Officers' Safety Justifying a Frisk of Defendant**

Defendant next objects to the magistrate judge's finding that the officers reasonably believed that defendant might have a weapon and was a threat to their safety. An officer may frisk a suspect for weapons in order to ensure the officer's safety if a reasonable officer under those circumstances would be justified in believing that the suspect was "armed and dangerous," regardless of whether the officer has probable cause to arrest the individual for a crime. *Terry*, 392 U.S. 27. An officer need not be "absolutely certain that the individual is armed" in order to perform such a frisk. *Id.* The question is instead whether "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*

Defendant argues that the arresting officers could not reasonably believe that defendant might have a weapon, or was a threat to the safety of the officers [Doc. 22]. In support of this argument, defendant explains that the 911 call to which the officers responded did not indicate the presence of any weapons; that Sgt. Coker did not view any weapons upon his entry into the residence at 2000 Washington Avenue; and that none of the other persons who were present displayed a weapon [*Id.*]. Defendant argues further that, while evidence may have existed that a fight had taken place at 2000 Washington Avenue, there was no indication that defendant was involved in the fight [*Id.*].

The Court again disagrees with defendant's analysis. In deciding that a reasonably prudent person in the officers' position would be warranted in the belief that his safety or the safety of others was in danger, the magistrate judge considered the fact that Sgt. Coker encountered a "disheveled and bleeding man and a woman yelling" when he arrived at 2000 Washington Avenue, which caused him to believe that something violent had occurred there; that defendant initially left the residence in a state of belligerent protest, returning only after being ordered to do so by the police; that defendant attempted to evade the reach of the officers when he returned to the porch and entered the residence; and that Sgt. Coker discovered a concealed amount of crack cocaine, and observed that the female in the residence appeared to be under the influence of crack cocaine, which led him to "heighten [his] need to contain the scene" while he investigated the incident [Doc. 20]. The Court thus finds that the magistrate judge correctly held, after a review of the totality of the circumstances, that the arresting officers could reasonably have believed that defendant

might have had a weapon and was a threat to their safety. The Court will therefore overrule defendant's second objection to the R&R.

### C. Whether, Even if Reasonable Suspicion Exists to Justify a *Terry* Frisk, the *Terry* Frisk Was Valid in this Case

Defendant next argues that, even if reasonable suspicion exists to justify a *Terry* frisk of defendant in this case, the frisk that was conducted exceeded permissible limits. An officer conducting a *Terry* frisk may seize items that he discovers through the sense of touch if the shape or weight of the object causes its incriminating nature to be immediately apparent to the officer. *Minnesota v. Dickerson*, 508 U.S. 366, 376 (1993). Defendant argues that the fact that Officer Thornton asked whether anything was going to "stick him" provides clear evidence of the officer's intention to reach into defendant's pockets while conducting the frisk [*Id.*]. Defendant argues further that, after making this inquiry, Officer Thornton "placed his hand into [defendant's] pocket and felt the pistol and immediately removed it" [*Id.*].

Defendant's characterization of the facts, however, contradicts the factual findings of the magistrate judge. The magistrate judge explicitly found that "Officer Thornton discovered the gun in . . . [d]efendant's pocket by first feeling the gun through . . . [d]efendant's pants" [Doc. 20]. The magistrate judge found further that Officer Thornton would have asked defendant if he were going to get "stuck" while frisking defendant regardless of whether the search was a pat-down or an inside-the-pocket search, "because a needle can slide through the pocket" [*Id.*]. The Court sees no reason to second-guess the factual determination of the magistrate judge on this point. *See United States v. Brown*, 441

9

F.3d 1330, 1346-47 (11th Cir. 2006) (characterizing "the magistrate judge, who observed the witnesses," as "free to believe those he found trustworthy and discredit the testimony of those who were not."). Given the factual determination that the officer conducted the *Terry* pat-down and "first felt the contour of the gun through . . . [d]efendant's pants as he pushed him back down onto his stomach" rather than after reaching into defendant's pocket, the Court finds that the *Terry* frisk that was conducted did not exceed the permissible scope of such frisks. The Court will therefore overrule defendant's third objection to the R&R.

### D. Whether Probable Cause Existed to Justify Defendant's Arrest for Public Intoxication

Defendant next argues that probable cause did not exist to justify his arrest for public intoxication [Doc. 22]. An officer may arrest a person if the officer has probable cause to believe that the person has committed or is committing a felony based upon the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). The same standard applies to the commission of misdemeanor offenses. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). In Tennessee, a "person commits the offense of public intoxication who appears in a public place under the influence of . . . any . . . intoxicating substance to the degree that . . . [t]he offender unreasonably annoys people in the vicinity." Tenn. Code Ann. § 39-17-310(a)(3).

Defendant argues that probable cause did not exist to justify his arrest for public intoxication because "the smell of alcohol [on someone's breath] in and of itself cannot lead to probable cause that a public intoxication offense has occurred" [Doc. 22]. Defendant

10

argues further that, although the "government presented evidence of other citizens watching the commotion surrounding 2000 Washington Apartment A," "there was no proof those people heard any statements of [defendant] or were unreasonably annoyed by any of his statements" [*Id.*].

The Court need not address defendant's argument that the government lacked probable cause to justify his arrest for public intoxication, because the magistrate judge correctly identified an alternative basis justifying defendant's arrest: Tennessee Code Annotated § 39-17-1307(a)(1). Section 39-17-1307(a)(1) provides that "[a] person commits an offense who carries with the intent to go armed a firearm . . . ." The "plain language" of this statute "makes clear the legislative intent to prohibit one who has been convicted of a violent felony from possessing a handgun." *State v. Johnson*, 79 S.W.3d 522, 526 (Tenn. 2002). As defendant apparently recognizes,[5] the discovery of a firearm on defendant's person during the *Terry* frisk provided probable cause to justify his arrest for possession of that firearm.[6] The Court will therefore overrule this objection to the R&R as well.

---

[5] "[I]tems that [an] officer may discover through the sense of touch during a protective pat-down under *Terry*"–as the magistrate judge found occurred in this case–"may be seized if the contour or mass of the object make[s] its incriminating nature immediately apparent to the officer" [Doc. 22 (citing *Dickerson*, 508 U.S. at 376).].

[6] The magistrate judge found that, during Officer Thornton's frisk of defendant, Officer Thornton "felt the end of a gun inside . . . [d]efendant's pants, and . . . alerted the other officers by saying, 'Gun, gun'" [Doc. 20]. The magistrate judge found that Officer Thornton then "pulled the gun out of . . . [d]efendant's pocket and handed it to Officer Schreiber" [*Id.*].

## III. Conclusion

For the reasons above, the Court **OVERRULES** defendant's Objections to the Report and Recommendation on His Motion to Suppress Evidence [Doc. 22]. The Court **ACCEPTS IN WHOLE** the Report and Recommendation [Doc. 20]. Defendant's Motion to Suppress and Memorandum in Support [Doc. 11] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE